# UNITED STATES DISTRICT COURT

for the

Middle District of North Carolina

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

803 Mobile Street
High Point, North Carolina 27260

)
)
)
)
)
)

Case No. 1:26MJ108

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Middle _____ District of _____ North Carolina _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | knowingly or intentionally, manufacture, distribute, or dispense, or possess with the intent to manufacture, distribute, or dispense a controlled substance |
| 18 U.S.C. § 924(c) | possession of a firearm in furtherance of a drug trafficking offense |

The application is based on these facts:

See attached affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/S/ Eli W. VanKuren
_____
*Applicant's signature*

Eli W. VanKuren, Task Force Officer, ATF
_____
*Printed name and title*

On this day, the applicant appeared before me via reliable electronic means, that is by telephone, was placed under oath, and attested to the contents of this Application for a search warrant in accordance with the requirements of Fed. R. Crim. P. 4.1.

Date: 4/13/2026

City and state: Winston Salem, North Carolina

_____
*Judge's signature*

Joi E. Peake, United States Magistrate Judge
_____
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

IN THE MATTER OF THE SEARCH OF
THE PREMISES LOCATED AT 803
MOBILE STREET HIGH POINT, NC 27260

Case No. 1:26mj 108

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Eli. W. VanKuren, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      Your Affiant is a Police Officer for the Winston-Salem Police Department (WSPD) and has been so employed since August 2015. Your Affiant is a graduate of the North Carolina Basic Law Enforcement Training taught by the Winston-Salem Police Department. Your Affiant is also duly sworn as a Task Force Officer for Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). Your Affiant holds a bachelor's degree in psychology from Harding University. During your Affiant's career in Law Enforcement, your Affiant has participated in multiple advanced training courses to include the North Carolina Police Law Institute, Advanced Gang Investigations, Violent Criminal Apprehension Techniques, and Basic Cell Phone Investigations among others.

2.      As a Federal Task Force Officer, your Affiant is authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3.      Your Affiant has conducted and assisted with numerous investigations involving the commission of violent crimes, such as shootings, aggravated assaults, robberies, etc. Through instruction, training, experience, participation in investigations, and the exchange of information with other law enforcement agents and officers, your Affiant has become familiar

with the manner in which people commit violent acts and the methods, language, and terms that are used to further their criminal activities.

4. During my career in law enforcement, I have conducted and participated in numerous complex case investigations involving federal and state firearms and controlled substance violations. In furtherance of these investigations, I have utilized multiple investigative techniques including but not limited to physical and electronic surveillance, controlled purchases of evidence, management of confidential informants, forensic examination of electronic devices, and the seizure of electronically stored communications. I have experience monitoring and gathering information received from court ordered interception of wire and electronic communication, pen register and/or trap and trace devices, real time GPS and geo-location information, historical call detail records, and vehicle GPS monitoring. Through this experience, I have been able to successfully gather criminal intelligence and utilize this information in furtherance of ongoing criminal investigations.

5. Based on my training, knowledge, and experience, I have become familiar with the following: (1) the manner in which drug traffickers and firearms traffickers (a) transport, store, and distribute drugs and firearms, and (b) collect, keep, and conceal the proceeds of their illegal activities; and (2) the ways in which drug and firearms traffickers use cellular telephones, electronic communications, internet service providers, social media, coded communications or slang during telephone conversations, false or fictitious identities, and other means to facilitate their illegal activities and thwart law enforcement investigations.

6. Additionally, through my training and experience, my conversations with other agents, and my participation in drug and firearms trafficking investigations, I am aware that:

2

a) Drug and firearms trafficking is an ongoing and recurring criminal activity. As contrasted with crimes against persons, which tend to be discrete offenses, drug and firearms trafficking is an illegal commercial business that is characterized by regular, repeated criminal activity;

b) Cellular telephones are an indispensable tool of the drug and firearms trafficking trade. Drug and firearms traffickers use cellular telephones, push-to-talk telephones, Short Message Service ("SMS"), electronic-mail, internet service providers, social media, and similar electronic means and/or devices, often under fictitious names or names other than their own, in order to maintain contact with other conspirators and associates. In addition, narcotic and firearms traffickers will often change their cellular telephones following the arrest of a member of their Drug Trafficking Organization ("DTO"), or at random, in order to frustrate law enforcement efforts. While traffickers may change phones, the contents of their phones are often preserved on remote servers through internet service providers, and they often do not change the names of the accounts maintained with these providers;

c) Drug and firearms traffickers keep and maintain records of their various activities. Such records are regularly concealed in a suspect's automobile, residence, office, in electronic accounts, and on their phones, and the records take various forms. Documents commonly concealed by traffickers, include but are not limited to, notes in code, deposit slips, wired money transactions, hidden bank accounts, photographs of co-conspirators, various forms of commercial paper, personal address books, notebooks, records, receipts, ledgers, travel receipts (rental

3

receipts, airline tickets, bus tickets, and/or train tickets) both commercial and private, money orders and other papers relating to the ordering, transportation, sale and distribution of controlled substances or other such documents which will contain identifying data on co-conspirators. These items are kept in locations that are considered safe by the drug traffickers such as safety deposit boxes, residences, vehicles and on their cloud or internet service provider accounts, where they have readily available access to them;

d) Drug and firearms traffickers use cellular telephones, computers, electronic storage media, smart phones, physical and virtual servers through the Internet, cloud-based services, social media, and other electronic communications devices to facilitate illegal firearms and drug transactions. The electronically stored information on these devices and servers is of evidentiary value in identifying other members of the drug trafficking and firearm trafficking conspiracies and establishing the relationship between these individuals and other identifying information stored on these devices;

e) Drug and firearms traffickers often take photos of themselves with large quantities of controlled substances, money, firearms, or high-end consumer items, like cars or watches. These "trophy" photos are often maintained on cellular telephones and electronically stored, to be shared on social media, or as symbols of their success;

f) Drug and firearms traffickers often carry and use firearms in order to protect their proceeds and contraband. Illegal firearms are often traded or sold between and among individuals involved in the drug trade.

4

7. The facts set forth in this affidavit are based upon my personal knowledge of this investigation, conversations with law enforcement officers and other individuals who have personal knowledge of the events and circumstances described herein, review of reports, documents, and recordings created by others, as well as information that I gained through training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

8. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. § 841(a)(1) [Distribution of Controlled Substances] and 18 U.S.C. § 924(c) [Possession of a Firearm in Furtherance of a Drug Trafficking Crime] have been committed by those residing at 803 Mobile Street High Point, NC 27260. There is also probable cause to search the property described in Attachment A for evidence of these crimes further described in Attachment B.

## PROBABLE CAUSE

1. In March 2025, High Point Police Department Officers began a narcotics investigation focused on a residential dwelling located at 803 Mobile Street, High Point, North Carolina. (the "TARGET RESIDENCE").

2. Investigation revealed that an India Abney resided at the TARGET RESIDENCE from March 2025 to the present.

5

3. High Point Police Officers made controlled purchases of narcotics at the TARGET RESIDENCE in March, April, May and June 2025. A subject later identified as Gary Thompson sold the narcotics in the April and May controlled purchases.

4. In June 2025, High Point Police officers executed a search Warrant at the TARGET RESIDENCE, as a result of the aforementioned controlled purchases. India Abney was present during the execution of the search warrant. Pursuant to the search, officers recovered approximately 65 grams of suspected cocaine, approximately 7 grams of suspect heroin, $1,243 US currency and a Taurus 9mmPistol.

5. On December 16, 2025, High Point Police officers responded to TARGET RESIDENCE after a lookout was broadcasted describing a vehicle which had fled from law enforcement. HPPD located the suspect vehicle parked in the 800 block of Mobile Street. While trying to locate the driver of said vehicle officers observed a subject exit TARGET RESIDENCE and began pacing in the back yard attempting to conceal items. Officers detained this individual, who was later identified as Joshua Murphy. At the time Murphy was detained he had approximately 45 grams of suspected crack cocaine in his possession. As a result of the investigation HPPD obtained a state search warrant for TARGET RESIDENCE. During the execution of the search warrant officers recovered a Gock Model 42 (.38 Caliber) pistol. During this incident India Abney and Gary Thompson were present at TARGET RESIDENCE. Following Murphy's arrest and being booked into the Guilford County Jail he was found to be in possession of approximately 24 grams of suspected Fentanyl.

6. On February 25, 2026 an ATF Task Force Officer (TFO) acting in an undercover (UC) capacity and an ATF Confidential Informant (CI) travelled to 1020 S. Main Street High

6

Point, NC. The UC and CI made contact with a subject in the parking lot and inquired about purchasing "fet". (the "Subject") Based on my training and experience I know that "Fet" is a slang term for Fentanyl. The Subject stated he knew that 'fet" could be obtained at "Mobile" and that he could take the UC and CI to make the purchase.

7. "Mobile" was determined to be Mobile Street in High Point which was approximately 0.4 miles from the parking lot at 1020 South Main Street. The Subject got into the UC Vehicle (UCV) and provided turn by turn directions to the UC until they arrived at the TARGET RESIDENCE. The Subject instructed the UC to park in front of the TARGET RESIDENCE. The Subject was then provided prerecorded ATF Agent Cashier (AC) funds to make a purchase of "Fet."

8. The Subject exited the UCV and walked along the side of TARGET RESIDENCE to the rear of the house. While waiting on the Subject, the UC observed India Abney arrive at and enter TARGET RESIDENCE. A short time later the Subject reemerged from the TARGET RESIDENCE and re-entered the UCV and provided the UC a plastic bag containing an off-white powder. The Subject stated that he bought the narcotics from a woman.

9. Following the operation the purchased substance was field tested. The test yielded a positive result for Fentanyl.

10. On March 18, 2026, an ATF Task Force Officer (TFO) acting in an undercover (UC) capacity again went to 1020 S. Main Street High Point, NC. Upon arriving contact was made with the same subject from the previous transaction, who again agreed to obtain Fentanyl for the UC.

11. The Subject entered the UCV and again provided directions to the UC to the 800 block of Mobile Street. The Subject was provided AC funds and exited the UCV. The Subject

7

was observed walking to the rear of TARGET RESIDENCE and entering through the rear door. After a short period of time, the Subject exited the rear of TARGET RESIDENCE and returned to the UCV. The Subject provided the UC with a plastic bag containing a rock like substance. The subject stated that the drugs were purchased from a male.

12. Following the operation the purchased substance was field teste positive for Fentanyl.

## CONCLUSION

Therefore, I respectfully request that the Court issue a search warrant for the premises at 803 Mobile Street High Point, NC 27260, within the Middle District of North Carolina, as more specifically identified in Attachment A.

Respectfully submitted,

/S/ Eli W. VanKuren

Task Force Officer Eli W. VanKuren
Bureau of Alcohol, Tobacco, Firearms and
Explosives

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means (telephone), was placed under oath, and attested to the contents of this written affidavit.

The Honorable Joi E. Peake
United States Magistrate Judge
Middle District of North Carolina

8

# ATTACHMENT A

## Property to Be Searched

### 803 Mobile Street High Point, NC 27260 (Target Residence)

The Target Residence is at 803 Mobile Street High Point, NC 27260, within the Middle District of North Carolina. The following is a photograph of the premises to be searched:



## ATTACHMENT B

### Items to be seized

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use, or which is or has been used as the means of committing a criminal offense, namely, violations of Title 21 U.S.C. § 841(a)(1) [Distribution of Controlled Substances], and Title 18 U.S.C. § 924(c) [Possession of a Firearm in furtherance of a Drug Trafficking Crime] in the form of the following:

a) Books, papers, records, receipts, personal telephone/address directories, telephone billing records, notes, ledgers, documents, airline tickets, travel documents, and other documents relating to the ordering, transportation, sale and distribution of controlled substances or other such documents which will contain identifying data on co-conspirators.

b) United States currency.

c) Cameras, photographs, videotapes, surveillance systems, or other images, in particular images of assets, controlled substances, and/or co-conspirators.

d) Identification cards to establish occupancy identify co-conspirators.

e) Cellular telephones, tablets, computers, or other electronic devices, medium used for facilitation of firearms or narcotics distribution, which may be seized but a separate warrant will be obtained to search.

f) Firearms accessories.

g) Packaging material, and other paraphernalia utilized for the sale and distribution of narcotics.

h) Any weapons, including but not limited to firearms, firearms accessories, and ammunition.

i) Any documentation showing ownership, purchase, sale or transfer of firearms or narcotics.

j) Illegal narcotics, including but not limited to cocaine, marijuana, heroin, methamphetamines, and prescription drugs in the possession of individuals to which the

drugs were not prescribed or that are not contained in the original bottle with prescription label affixed.

.